IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY V., on behalf of L.V., a minor, | ) |
| | ) No. 20 C 3420 |
| Plaintiff, | ) |
| | ) Magistrate Judge M. David Weisman |
| v. | ) |
| | ) |
| ANDREW SAUL, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Mary V., on behalf of minor child L.V., appeals the Commissioner's decision denying L.V.'s application for Social Security benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**Background**

Plaintiff, on behalf of L.V., applied for supplemental security income on July 25, 2014, alleging a disability onset date of July 1, 2014. (R. 50.) The application was denied initially, on reconsideration, and after a hearing before an ALJ. (R. 13-24, 58, 68.) The Appeals Council denied review (R. 1-3), and plaintiff appealed to this Court, which remanded the case to the Commissioner for further proceedings. (R. 524-34.) After another hearing, the ALJ once again denied L.V.'s claim. (R. 404-15.) Plaintiff did not seek review by the Appeals Council and the Appeals Council did not otherwise assume jurisdiction over this case, leaving the ALJ's decision as the final decision of the Commissioner. 20 C.F.R. § 416.1484(d).

The ALJ used the three-part, sequential test for determining whether a child is disabled, considering whether: (1) L.V. had performed any substantial gainful activity during the period for

which she claims disability; (2) she has a severe impairment or combination of impairments; and (3) her impairment meets, medically equals, or functionally equals a listed impairment. (R. 14); *see* 20 C.F.R. § 416.924(b)-(d). In determining whether an impairment functionally equals a listing, the ALJ must consider the child's functioning in six domains: (1) "[a]cquiring and using information"; (2) "[a]ttending and completing tasks"; (3) "[i]nteracting and relating with others"; (4) "[m]oving about and manipulating objects"; (5) "[c]aring for [one]self"; and (6) "[h]ealth and physical well-being." 20 C.F.R. § 416.926a(b)(1). An impairment or combination of impairments functionally equals a listing if the child has "marked" limitations in two of the domains or an "extreme" limitation in one of the domains. 20 C.F.R. § 416.926a(d). A "marked" limitation is one that is "'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2)(i). A child has a "marked" limitation when her "impairment(s) interferes seriously with [her] ability to independently initiate, sustain, or complete activities." *Id.* An "extreme" limitation is the "rating . . . give[n] to the worst limitations," though it does not "necessarily [require] a total lack or loss of ability to function." 20 C.F.R. § 416.926a(e)(3)(i).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the date of her application. (R. 405.) At step two, the ALJ found that plaintiff has the severe impairments of "attention deficit/hyperactivity disorder (ADHD); a learning disorder; an adjustment disorder and anxiety." (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment that meets, medically equals, or functionally equals a listed impairment. (R. 405-12.) Thus, the ALJ concluded, plaintiff is not disabled. (R. 415.)

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Plaintiff argues that the ALJ's determination that L.V. is not markedly limited in the domain of interacting and relating with others is not supported by substantial evidence. "In this domain, [the ALJ] consider[s] how well [the claimant] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). "Interacting means initiating and responding to exchanges with other people, for practical or social purposes . . . . by using facial expressions, gestures, actions, or words." 20 C.F.R. § 416.926a(i)(1)(i). "Relating to other people means forming intimate relationships with family members and with friends who are [the same] age, and sustaining them over time." 20 C.F.R. § 416.926a(i)(1)(ii).

In discussing this domain, the ALJ acknowledged that L.V. has "anger issues," "was easily frustrated," and "would cry out and negatively react when she had a conflict with a peer." (R. 411.) However, the ALJ concluded that L.V. is not markedly limited in this domain because:

> [A]t the December 2014 consultative examination, [L.V.] was described as having no behavior problems; she had few friends; she was cooperative during the examination; and her demeanor was friendly and outgoing.
> In addition, within [L.V.'s] IEPs, there were also reports of positive social behavior. For example, in March 2016, [L.V.] was described as quiet, respectful and kind. As another example, [L.V.'s] May 2018 IEP indicates that [L.V.]

3

> interacted appropriately with her peers and teachers; she was well behaved and well-liked by her classmates; she was very helpful around the classroom; and she had appropriate independent functioning skills. Similarly, in 2019, [L.V.'s] IEP stated that [L.V.] interacted appropriately with her peers and with adults in the classroom; and she participated in class and volunteered to do so.
> 
> Moreover, in September 2019, Sarah Kelly, [L.V.'s] diverse learner teacher, and Scott Fogel, [L.V.'s] Algebra teacher, reported that [L.V.] has no problems interacting and relating to others. Likewise, [L.V.'s] freshman seminar co-teacher reported that [L.V.] has no problems in interacting and relating to others.

(R. 411-12) (citations omitted).

The ALJ did not consider L.V.'s speech and language skills in this domain, which plaintiff contends is error. The Commissioner's guidance on evaluating this domain states, in part:

> The ability to interact and relate with others requires the ability to communicate in an age-appropriate manner. To communicate with others, a child needs both speech and language. Speech is the production of sounds for the purpose of oral communication. Language provides the message of communication. It involves understanding what is heard and read (receptive language) and expressing what one wants to say to others, either orally or in writing (expressive language). Within age-appropriate expectations, a child must speak clearly enough to be understood, understand the message that another person is communicating, and formulate sentences well enough to convey a message.

SSR 09-5P, 2009 WL 396026, at *3 (Feb. 17, 2009) (footnotes omitted).

As plaintiff points out, there is evidence that L.V. has struggles with reading and writing, which negatively impact her academic performance. (*See, e.g.*, R. 738 (2017 IEP stating that L.V. "is inconsistent in her ability to fluently read grade level passages and books with independence," which causes her to "struggle with comprehension," and she "struggles to write with sufficient detail"); R. 703 (2016 IEP stating that L.V. "has a difficult time recalling facts" and needs "assistance when learning new vocabulary words"); R. 902 (2014 IEP stating that L.V. can "verbally communicate her needs and/or wants" but "struggles with written communication" and "has trouble writing complete, coherent grammatically correct sentences").) But there is no evidence to suggest that L.V.'s speech cannot be understood, she cannot understand what others say to her, or she "[h]as difficulty communicating with others," the hallmarks of a limitation in

4

this domain. SSR 09-5P, 2009 WL 396026, at *3, *7. Because the record does not show that L.V.'s difficulties with reading and writing inhibit her ability to communicate with other people, the ALJ's failure to consider them in evaluating the domain of interacting and relating with others, if error, was harmless. *See Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010) (stating that the doctrine of harmless error applies to judicial review of administrative decisions).

Alternatively, plaintiff argues that the ALJ's evaluation of L.V.'s subjective symptoms is flawed. She argues that: (1) L.V.'s IEPs, Vanderbilt assessments,[1] and the testimony of expert witness Dr. Anderson are consistent with "marked limitations in the domain[] of . . . Attending and Completing Tasks"; (2) evidence that L.V. improved with medication is not "*per se* inconsistent" with a finding of disability; and (3) the teacher questionnaires the ALJ cites are unreliable because the teachers had only known L.V. for three weeks when they completed the forms. (ECF 25 at 13-14.) The ALJ found that all of this evidence, including the teacher questionnaires, supported a finding that L.V. was markedly limited in the domain of acquiring and using information but not in the domain of attending and completing tasks. (R. 409-11.) Plaintiff does not substantively contest the ALJ's finding with respect to the latter domain, and thus has waived the issue. *See Scarberry v. Astrue*, No. 1:11-CV-00816-MJD, 2012 WL 3579916, at *7 (S.D. Ind. Aug. 17, 2012) ("Scarberry makes no argument here why *res judicata* should not have applied to any of these instances in the medical record and therefore waives such argument."). Given that waiver, any symptom evaluation error the ALJ may have made related to the domain of attending and completing tasks is harmless. *Parker*, 597 F.3d at 924.

---

[1] The Vanderbilt assessment "is a psychological assessment tool for parents of children aged 6 to 12 designed to measure the severity of attention deficit hyperactivity disorder (ADHD) symptoms" and "also includes items related to other disorders which are frequently comorbid with ADHD." Vanderbilt ADHD Diagnostic Rating Scale (VADRS) (psychology-tools.com) (last visited May 6, 2021).

5

## Conclusion

For the reasons set forth above, the Court affirms the Commissioner's decision and terminates this case.

**SO ORDERED.**                                **ENTERED:  March 31, 2022**

**M. David Weisman**
**United States Magistrate Judge**